

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

The following constitutes the ruling of the court and has the force and effect therein described.

Signed August 1, 2023

_____
United States Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| FRESH ACQUISITIONS, LLC, et al. | § | BANKR. CASE NO. 21-30721-sgj11 |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |
| ------------------------------------------------- | | ------------------------------------------------- |
| | § | |
| DAVID GONZALES, as Liquidating Trustee of the Fresh Acquisitions Liquidating Trust, | § § § § | |
| | § | |
| Plaintiff. | § | Adv. Pro. No. 23-03000-sgj |
| | § | |
| v. | § | |
| | § | |
| SZTX INVESTMENTS, LLC, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER GRANTING TRUSTEE'S MOTION FOR
SUMMARY JUDGMENT**

## I. Introduction

This post-confirmation adversary proceeding involves an attempt by a liquidating plan trustee to avoid and recover, pursuant to sections 549 and 550 of the Bankruptcy Code, two relatively small post-petition transfers of property of the estate, by the Chapter 11 debtors, as these transfers were allegedly not authorized under the Bankruptcy Code or by the court. The transfers were made to an entity that appears to have been an "insider," as contemplated by Bankruptcy Code section 101(31). The amounts were allegedly for fees in connection with a debtor-in-possession ("DIP") financing loan, although the amounts were not paid to the DIP lender or any of its professionals, were not within budgeted amounts, and were not paid pursuant to court-approved procedures which required notice and opportunity to object to certain parties, including the unsecured creditors committee and the U.S. Trustee. All of the material facts are undisputed. The trustee filed a motion for summary judgment and the parties waived oral argument. For the reasons set forth below, the court rules that summary judgment in favor of the trustee is appropriate.

## II. Undisputed Facts

*A. The Case and Parties*

<u>The Debtors and Owners.</u>  The adversary proceeding pertains to the bankruptcy case of Fresh Acquisitions, LLC and its related entities. On April 20, 2021 (the "Petition Date"), Fresh Acquisitions, LLC and its related entities (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code before this court. The Debtors owned various restaurants, including those operating under the names "Furr's" and "Tahoe Joe's." The following persons owned the majority of each of the Debtors: Allen Jones, Jason Kemp, Larry Harris and Brian Padilla (collectively, the "Owners").

<u>The Plan Trustee/Plaintiff.</u>  The Official Committee of Unsecured Creditors ("UCC") proposed a *First Amended Joint Chapter 11 Plan of Liquidation* filed on October 30, 2021 (the "Plan").  The Plan was confirmed by *Findings of Fact, Conclusions of Law, and Order (I) Approving Disclosure Statement on a Final Basis and (II) Confirming The Official Committee of Unsecured Creditors' First Amended Joint Chapter 11 Plan of Liquidation* (the "Confirmation Order"), entered on December 20, 2021.  The Fresh Acquisitions Liquidating Trust (the "Trust") was formed pursuant to the Plan on January 3, 2022.  David Gonzales (the "Plan Trustee") was appointed as the trustee of the Trust. In accordance with the terms of the Plan, the Confirmation Order, and the Fresh Acquisition Liquidating Trust Agreement (the "Trust Agreement"),[1] on the Effective Date, (a) all "Causes of Action" of the Debtors were vested in the Trust, and the Plan Trustee was conferred with standing to bring and prosecute the Causes of Action vested and transferred to the Trust on behalf of the Trust; and (b) all of the Debtors' assets as provided in Section 541 of the Bankruptcy Code were transferred to and vested in the Trust.

<u>The Defendant.</u>  The Defendant is SZTX Investments, LLC ("SZTX" or the "Defendant"), a Texas limited liability company.  SZTX has two members:  LRJJ Holdings, Ltd. and CPWI Investments, LLC, that are, in turn, owned and managed by two Owners of the Debtors, Larry Harris and Allen Jones, respectively.  Harris and Jones are also managers of SZTX.  The Defendant was created solely to provide the source of cash for the Debtors' DIP financing facility, which it did through its own loan to the Debtors' DIP Lender, VitaNova Brands, LLC ("VitaNova" or the "DIP Lender"). In other words, the Defendant was the lender to the DIP Lender. The business reason for the two tiers of entities is unclear—it was not disclosed during the bankruptcy case.

---

[1] Bankr. Doc. No. 499. Unless indicated otherwise, all references to "Bankr. Doc. ___" refer to the docket in the Debtors' main bankruptcy case, Case No. 21-30721 (SGJ).

3

<u>The Adversary Proceeding</u>.  On January 3, 2023, the Plan Trustee initiated this adversary proceeding against the Defendant pursuant to 11 U.S.C. § 549, seeking avoidance and recovery of two post-petition transfers (the "Challenged Transfers") made to the Defendant by one of the Debtors, Tahoe Joe's Inc. ("Tahoe Joe's").  The Plan Trustee requests a monetary judgment against the Defendant in the amount of the Challenged Transfers, pursuant to 11 U.S.C. § 550(a). The Plan Trustee filed his Trustee's *Motion for Summary Judgment* ("MSJ") on May 26, 2023, along with a *Brief* and supporting *Appendix*,[2] asserting that no genuine issue of material fact exists regarding the Challenged Transfers.  In response, the Defendant asserted that certain Orders of this court regarding the Debtors' DIP financing authorized the Challenged Transfers and that there are genuine issues of material fact sufficient to warrant denial of the Plan Trustee's MSJ. The Defendant submitted that this court should enter an order denying the MSJ.

B.  *The DIP Loan*.

The Debtors entered their bankruptcy case in the way most debtors do—in need of liquidity. The Debtors also represented—as many Chapter 11 debtors do—that the only option for liquidity, in their present, dire situation, was an insider loan.  Accordingly, on the Petition Date, the Debtors filed their *Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* (the "DIP Motion").[3] In the DIP Motion, the Debtors sought court permission to enter into a senior secured

---

[2] A.P. Docs. 14, 15, & 16, respectively. Unless indicated otherwise, all references to "A.P. Doc. ___" refer to the docket maintained in this adversary proceeding. Note that the Liquidating Trustee's Appendix will sometimes be referred to as "Trustee's App'x. ___."

[3] Bankr. Doc. 16.

loan facility in the amount of $3,500,000 (the "DIP Financing") with VitaNova. VitaNova was managed by Jason Kemp, Jones, and Harris, all Owners of the Debtors.[4]

The DIP Motion provided that in exchange for financing, the Debtors would pay the DIP Lender current cash payments of "DIP Lender Reimbursements," defined as "the principal, interest, fees, expenses and other amounts payable under the DIP Loan Documents as such become earned, due and payable under and as set forth therein, including, but not limited to, the fees and costs of the DIP Lender's professionals, advisors and consultants."[5] The DIP Loan Documents were defined as "the DIP Credit Agreement and any other agreements, instruments, pledge agreements, guarantees, security agreements, intellectual property security agreements, control agreements, notes and other documents reasonably required by the DIP lender…"[6]

This court approved the DIP Financing on an interim basis in its *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief*, entered on May 14, 2021 (the "Interim DIP Order").[7] The Interim DIP Order provided a specific procedure for the parties to follow when paying out the DIP Lender Reimbursements: the DIP Lender was to deliver an invoice to the Debtors for a Reimbursement, and the professionals for the DIP Lender would deliver a copy of the invoices to counsel for the Creditors' Committee and the U.S. Trustee. The Debtors, the U.S. Trustee and the Creditors' Committee were then allowed five business days from the date they received a DIP Lender Reimbursement invoice to object to its payment.[8] In addition, the Interim DIP Order contained an "Approved Budget" (attached as

---

[4] *See* Bankr. Doc. 180 (*Ltd. Obj. by UCC to Debtors' Bid Procedures Motion*), p. 3-4, Exhs. A-C.
[5] Bankr. Doc. 16, p. 6.
[6] Bankr. Doc. 16, p. 37.
[7] Bankr. Doc. 71.
[8] Bankr. Doc. 71, p. 21, para. 6(ii).

5

Exhibit 2 to the Interim DIP Order), which was a 13-week cash flow forecast setting forth all projected cash receipts and cash disbursements on a weekly basis. This initial Approved Budget had a line item for "DIP Financing Related Fees, Interest, etc." in the total amount of $167,000.

This court approved the DIP Financing on a final basis in its *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief*, entered on May 14, 2021 (the "Final DIP Order").[9] The Final DIP Order contained provisions for payment of the DIP Lender Reimbursements that were identical to those contained within the Interim DIP Order.[10] In addition, it included (as Exhibit 2) an updated Approved Budget that also contained a line item for "DIP Financing Related Fees, Interest, etc.," but the amount was reduced from $167,000 to $125,000.

The Final DIP Order included a copy of the DIP Credit Agreement, which provided that the proceeds of the DIP Loans may be used "solely for the following purposes, in each case in accordance with the Approved Budget: … (ii) pay interest, fees, costs and expenses related to the Loan(s), this Agreement, the other Loan Documents, and the DIP Facility; … (iv) pay reasonable fees, costs and expenses of the Lender, including the reasonable fees and expenses of the Lender's professionals, advisors, and consultants; …."[11]

Definitions are important here, for reasons that will become clear later in this opinion. The term "DIP Facility" was defined in the Final DIP Order as "the facility for the Postpetition Loan(s) pursuant to this Agreement" and "Lender" was defined as "VitaNova Brands, LLC and/or its successor(s) and assignee(s)."[12] The term "Postpetition Loan" was defined in the Final DIP Order

---

[9] Bankr. Doc. 157.
[10] *Id.*, p. 21.
[11] Bankr. Doc. 157, p. 59.
[12] *Id.*, p. 55; p. 57.

as "such remaining portion of the Loan Amount not previously advanced as the Prepetition Loan or the Interim Loan" by the Lender (VitaNova Brands, LLC) to or on behalf of the Borrowers (the Debtors).[13]

### C. The Defendant SZTX's Involvement with the DIP Loan and the Challenged Transfers

The Defendant, SZTX, was created to provide VitaNova with a substantial portion of the funding needed for the Debtors' DIP Financing. As provided through Defendant's discovery responses, Defendant advanced $1.7 million to VitaNova through an initial loan amount and then a subsequent draw that was included in the DIP Financing (the "SZTX-VitaNova Loan").[14] However, SZTX was **never mentioned** in any of the Debtors' DIP Loan documents, the Emergency DIP motion, or the two DIP orders entered by this court. As mentioned above, the Interim and Final DIP orders defined the "Lender" *solely* as VitaNova and any successors or assignees (SZTX is neither).

On May 7, 2021, Larry Harris (Owner of SZTX and Debtors) emailed Martin Cortes (VitaNova's Chief Financial Officer), Nathan Calvert,[15] and Allen Jones (Owner of SZTX and Debtors) the following, requesting $19,922.00 for legal work performed on the loan ***between SZTX and VitaNova:***[16]

---

[13] *Id.*
[14] *See Trustee's App'x.,* p. 83.
[15] Nathan Calvert is the Organizer who filed Defendant's Certificate of Formation [*Trustee App'x,* p. 23] and who owns 100% of the equity of NSTX Enterprises, LLC, which, in turn, is Defendant's registered agent in Texas [*Id.,* p. 22].
[16] *Id.*, p. 41.

7

> To all:
>
> Pursuant to the SZTX Investment, LLC, DIP loan agreement, VNB is required to pay for the legal work for this loan. Please provide confirmation and timing for remittances to the required parties.
>
> Thank you,
>
> Larry
>
> totals owed:
>
> | | |
> |---|---|
> | Loan Prep Inv#2003 | $16,267 |
> | Loan Prep Inv#2002 | $3,725 |
> | **Total Owed** | **$19,992** |

Nathan Calvert responded to the email and submitted supporting invoices that identified *VitaNova* as the customer and specified the expenses as reimbursement for the costs incurred with the SZTX-VitaNova Loan preparation.[17] Three days later, the Debtor Tahoe Joe transferred $19,992.00 by check to SZTX.[18] The purpose of the $19,992.00 payment to SZTX, as described in Tahoe Joe's cash disbursements detail report, was "DIP FIN."[19] Despite the procedure clearly laid out in this court's DIP Orders, neither the U.S. Trustee nor the Creditors' Committee received a copy of the invoice first, nor were they given the agreed-upon, five-day period to object.

On June 22, 2021, Nathan Calvert, representing NSTX Enterprises, LLC (authorized agent of Defendant), sent an email to Dan Lentes, Martin Cortes, Harris, and Jones (at their VitaNova email addresses) requesting payment of an attached $1,690.00 invoice from SZTX. According to Nathan Calvert's email, the invoice reflected the cost incurred by Defendant in sending out a default notice

---

[17] *Id*., at p. 43-47.
[18] Bankr. Doc. 244 (*Tahoe Joe's, Inc. Monthly Operating Report, Month Ended May 31, 2021*), p. 7.
[19] *Id*.

to VitaNova per the loan agreement between VitaNova and SZTX.[20] Lentes, acting as a representative of VitaNova, replied to Calvert's June 22, 2021 email: "Approved".[21] The very next day, Tahoe Joe's bank records show it transferred $1,690.00 by ACH transfer to "SZTX Investments Dip Loan Reim."[22] Again, the U.S. Trustee and the Creditors' Committee did not receive copies of the invoices and were not given five days to object prior to payment.

As indicated, the Plan Trustee now moves for summary judgment, seeking to avoid both of these Challenged Transfers (the May 10, 2021 transfer of $19,992 and the June 23, 2021 transfer of $1,690) to Defendant under section 549 of the Bankruptcy Code, arguing they are both unlawful postpetition transfers of the property of the bankruptcy estate. Defendant, in turn, (1) cannot confirm and therefore denies receipt of the $1,690 June 23, 2021 payment, and (2) argues that the $19,992 May 10, 2021 payment was properly authorized by the court's interim and final DIP Orders, and thus allowable.

### III. Legal Analysis

*A. Jurisdiction and Venue*

This court has subject matter jurisdiction over this adversary proceeding, as it arises under Title 11 of the United States Code (the "Bankruptcy Code"), and also arises in and relates to a case under the Bankruptcy Code. 28 U.S.C. §§ 157(b)(2) and 1334.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E) and (O), and this court has constitutional authority to enter a final order in this matter. Both parties have consented to the bankruptcy court entering final orders in this adversary proceeding. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409(a).

---

[20] *Trustee's App'x.*, p. 56.
[21] *Id.*
[22] Bankr. Doc. 372-1, p. 4.

9

B. *Summary Judgment Standard*

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Rule 56 "**mandates** the entry of summary judgment, after an adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,"[23] because "[i]n such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[24] A fact is **material** "if the governing substantive law identifies it as having the potential to affect the outcome of the suit."[25] A dispute as to a material fact is **genuine** "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[26]

A movant can discharge its burden of proof by making a prima facie showing in support of its position on a particular issue.[27] Once the movant has done so, the non-moving party must set forth specific facts controverting the movant's prima facie case, *id*., though it must present more than a mere "scintilla" of evidence in its favor.[28] Mere "conclusory allegations" or "unsubstantiated assertions" are not enough to defeat a well-pleaded motion.[29] This standard does not change merely because resolution of the relevant issue is "highly fact specific."[30] Accordingly,

---

[23] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (emphasis added in original).
[24] *Celotex*, 477 U.S. at 322-23, 106 S.Ct. at 2552.
[25] *Hutton Communications, Inc. v. Communication Infrastructure Corp.*, 461 F.Supp.3d 400, 403 (N.D. Tex. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).
[26] *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505) (other citation omitted)).
[27] *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994).
[28] *Anderson*, 477 U.S. at 252.
[29] *Little*, 37 F.3d at 1075.
[30] *Anderson*, 477 U.S. at 252.

summary judgment is appropriate if the evidence tendered by the non-moving party is "merely colorable" or "not significantly probative."[31] When evaluating a motion for summary judgment, the court views the facts "in the light most favorable to the nonmoving party," but "only if there is a 'genuine' dispute as to those facts."[32] "[I]t is not incumbent upon the court to comb the record in search of evidence that creates a genuine issue as to a material fact."[33] Rather, "[t]he nonmoving party has a duty to designate the evidence in the record that establishes the existence of genuine issues as to the material facts."[34] Summary judgment is appropriate where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, or where it is so overwhelming that it mandates judgment in favor of the movant."[35] If the nonmoving party fails to meet its burden of submitting competent summary judgment evidence that there is a genuine dispute as to a material fact, "the motion for summary judgment ***must*** be granted."[36]

C. *Authorization (or Not) for the Challenged Transfers*

Under 11 U.S.C § 549(a), a trustee may avoid: (1) a transfer; (2) of property of the estate; (3) that occurs after the commencement of the case; and (4) that is not authorized by the Bankruptcy Code or the court. If a trustee makes his *prima facie* case under section 549, a

---

[31] *Id*. at 249-50.
[32] *Scott v. Harris*, 550 U.S. at 380, 127 S.Ct. at 1776; *see also Hacienda Records, L.P. v. Ramos*, 718 F.App'x 223, 234 (5th Cir. 2018) ("The court considers the record as a whole, and draws all justifiable inferences in favor of the non-movant[, b]ut the non-movant bears 'the burden of demonstrating by competent summary judgment proof that there is [a genuine dispute] of material fact warranting trial.'")(internal citations omitted).
[33] *Hutton Communications*, 461 F.Supp.3d at 403 (citing *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003)).
[34] *Id.* (citing *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548).
[35] *Armstrong v. City of Dallas*, 997 F.2d 62, 66 n.12 (5th Cir.1993) ("We no longer ask whether literally little evidence, i.e., a scintilla or less, exists but, whether the nonmovant could, on the strength of the record evidence, carry the burden of persuasion with a reasonable jury."); *see also*, *Anderson*, 477 U.S. at 251-252, 106 S.Ct. at 2512 (where the Court stated that the inquiry under a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.").
[36] *Little*, 37 F.3d at 1076.

defendant then bears the burden of proving the authority for (or validity of) the transfers.[37] In essence, there are two questions for this court to consider: (i) whether the two challenged transfers were in fact postpetition transfers of property of the estate, and (ii) if so, did the Bankruptcy Code or this court nonetheless authorize them.

(i)  The Challenged Transfers are Postpetition Transfers of Estate Property

As mentioned, our first inquiry is whether the two Challenged Transfers were postpetition transfers of bankruptcy estate property. The Liquidating Trustee has pointed out evidence (in the form of Debtor Tahoe Joe's monthly operating reports, bank records, and emails) of both the May 10, 2021 Transfer for $19,992 and the June 23, 2021 Transfer for $1,690 from Tahoe Joe's to Defendant.[38] Both payments occurred *after* the Petition Date of April 20, 2021, meaning the money was property of Tahoe Joe's bankruptcy estate and was paid to Defendant after the commencement of the case. ***Defendant admits the May 10 ($19,992) Transfer was a postpetition transfer of property of the estate from Tahoe Joe's but denies receipt of the June 23 ($1,690) Transfer***. Defendant does not dispute that the $1,690 payment is booked on the Debtors' transactions reflected in Tahoe Joe's monthly operating report but argues that the Liquidating Trustee has not established that the payment was ***actually made*** (as opposed to just recorded). In its *Answer*, Defendant denied finding any record of the $1,690 payment.[39]

In his summary judgment motion, Liquidating Trustee identified specific facts in the record showing that: Tahoe Joe's June 2021 Monthly Operating Report (which is signed by the Debtors' Chief Restructuring Officer under penalty of perjury) records the $1,690 transfer being made on June 23, 2021;[40] Tahoe Joe's bank account shows the transfer being made on the same date;[41] one

---

[37] *See* Fed. R. Bankr. P. 6001.
[38] Bankr. Doc. 244; 372-1.
[39] A.P. Doc. 7, p. 3.
[40] Bankr. Doc. 372, p. 4; 372-1, p. 4
[41] Bankr. Doc. 372-1, p. 31.

day before the transfer was made, Calvert emailed representatives of VitaNova asking that they pay an invoice from SZTX in the exact amount of $1,690;[42] and a VitaNova representative approved the $1,690 payment by replying to Nathan Calvert's email the same day.[43] In response, Defendant simply asserts there is no evidence the payment actually occurred.

It is a basic tenet of federal procedure that when the party seeking summary judgment meets its burden under Rule 56, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts."[44] Rather, the non-movant must come forward with "specific facts showing that there is a ***genuine issue for trial***."[45] Here, Defendant has not pointed to ***any*** specific facts to support its contention that the $1,690 payment (which is reflected in the Debtors' court filings and bank records and was discussed by email) did not take place. It simply denies the transfer happened. This is clearly insufficient to establish a genuine dispute of material fact that precludes summary judgment. Therefore, the court finds that the Liquidating Trustee has met his burden in establishing that both the Challenged Transfers made by Tahoe Joe's to Defendant constituted postpetition transfers of property of the bankruptcy estate.

      (ii)    <u>The Challenged Transfers were not Authorized by the Court or the Bankruptcy Code.</u>

The next question is whether these Challenged Transfers were authorized by either the Bankruptcy Code or the court. As discussed above, the Liquidating Trustee has met his burden in establishing that the Challenged Transfers made by Tahoe Joe's to Defendant were postpetition

---

[42] *Trustee's App'x.*, p. 56-57.
[43] *Id.*
[44] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).
[45] *Id*. at 587 (so in original); *see also Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001) ("Issues of material fact are 'genuine' only if they require resolution by a trier of fact. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported summary judgment motion."), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

13

transfers of property of the estate. Per Fed. R. Bankr. P. 6001, the burden now shifts to Defendant to establish the validity of (i.e., authorization for) these transfers.

Defendant states in its brief that it relies upon the Emergency DIP Motion and the interim and final DIP orders that approved the Emergency DIP Motion (as well as the applicable sections of the Bankruptcy Code incorporated within these documents) in claiming the Challenged Transfers were authorized by the court. As stated in the Emergency DIP Motion, the Debtors sought authorization from the court "to pay the principal, interest, fees, expenses, and other amounts payable under the DIP Loan Documents as such become earned, due and payable under and as set forth therein, including, ***but not limited*** to, the fees and costs of the DIP Lender's professionals, advisors, and consultants."[46] The DIP Loan Documents were defined as "the DIP Credit Agreement ***and any other agreements***, instruments, pledge agreements, guarantees, security agreements, intellectual property security agreements, control agreements, notes and other documents reasonably required by the DIP lender…"[47] The Interim and Final DIP Orders approved of these definitions and authority sought by the Debtors.

Based on this wording, Defendant argues that the Challenged Transfers were, in fact, authorized and approved by the court in the Interim and Final DIP Orders. The language in the Emergency DIP Motion, as approved by the court, authorized the reimbursement of the DIP Lender's fees and expenses. Even though the loan between SZTX and VitaNova was not identified or mentioned, Defendants argue the SZTX-VitaNova Loan agreement was a necessary agreement reasonably required by the DIP Lender within the meaning of the Emergency DIP Motion (given the funding from SZTX was needed in order for the DIP Lender to provide the DIP Financing). In sum, Defendant argues that the language used in the DIP Motion and by the court in its DIP Orders

---

[46] *See* Bankr. Doc. 16 (emphasis added).
[47] *Id*.

14

regarding the DIP Loan Documents and Reimbursements is ***broad enough to encompass the Challenged Transfers from Tahoe Joe's to Defendant***.

The Defendant appears to concede that the payments in question should have been made ***first to VitaNova***: Defendant states that the fact the Challenged Transfers, instead, went ***directly*** to SZTX appears to be a mere mistake made by the then-CFO of VitaNova. However, it claims that this error is of no real consequence and that Defendant should not be penalized for it, given that, if the money had instead gone to VitaNova first who then paid SZTX, the Liquidating Trustee would have no cause of action. Furthermore, the Defendant does not view as detrimental the noncompliance with the court's order requiring that copies of the invoices for DIP Reimbursement fees be first given to the U.S. Trustee and UCC, who then had a five-day objection period. Rather, the Defendant characterizes the attempted avoidances by the Liquidating Trustee of the Challenged Transfers as a "gotcha," arguing that SZTX, created to enable the DIP Financing, had no knowledge of the details for obtaining reimbursement under the DIP Interim and Final Orders and is therefore not at fault.

As previously noted, upon review of the evidence submitted, there is no question that the Challenged Transfers made by Tahoe Joe's to SZTX were postpetition transfers of property of the bankruptcy estate; the only real dispute is whether they were authorized by the court in the Interim and Final DIP Orders. As such, this does not present a dispute of fact for trial, as the proper interpretation of this court's orders is a question of law.[48] The Northern District of Texas has held that the terms of an unambiguous court order are interpreted according to their plain meaning and are enforced as written.[49]

---

[48] *Highland Hills, Ltd. v. U.S. Dept. of Housing and Urban Dev. (In re Highland Hills, Ltd.)*, 232 B.R. 868, 870 (N.D. Tex. 1999).
[49] *Id*., at 870.

15

Defendant has argued that the wording of the DIP Orders can be interpreted to include authorization for the Debtors to pay not only the fees and expenses of VitaNova for the DIP Loan, but also the fees and expenses of SZTX for the SZTX-VitaNova Loan, as the funding for the latter enabled the former. However, this does not square with the explicit language of the DIP Orders. The Interim and Final DIP Orders are unambiguous. ***Nowhere in either the DIP Orders or the Emergency DIP Motion is SZTX ever mentioned***. And nothing in either of the DIP Orders mentions the Debtors paying any amounts to SZTX.

Section 3.01 of the DIP Credit Agreement as incorporated in the Final DIP Order provides that the Borrowers shall immediately reimburse "Lender" (defined as VitaNova) for expenses and costs "Lender incurs ***in connection with the closing of the Loan(s), the making of any Advance, and the preparation of the Note, this Agreement, the Pledge Agreements and any agreement or instrument required by this Agreement.***"[50] The payments at issue here were not incurred in connection with "the closing of the Loan(s)" under the DIP Credit Agreement, "the making of any Advance" thereunder, or the preparation of the DIP Loan Documents. Rather, they were incurred in connection with the separate loan between SZTX and VitaNova. The DIP Orders authorize the Debtors to pay the DIP Lender, again, ***defined as VitaNova***, the DIP Lender Reimbursements, the "amounts payable under the DIP Loan Documents" (i.e., the DIP Credit Agreement) … "including, but not limited to, the fees and costs of the DIP Lender's professionals, advisors, and consultants." The facts and evidence establish that the Challenged Transfers in question here were not made to VitaNova (they were made to SZTX) and they were not in payment of the fees and costs of VitaNova's professionals (based on the emails and invoices, they were to pay fees and costs of SZTX's professionals).

---

[50] Bankr. Doc. 157, p. 63.

16

Based on a plain reading of this court's orders, reimbursements for the fees and costs of SZTX from its loan to VitaNova were not included or contemplated in the Interim or Final DIP Order. To hold that they nevertheless fall within the bounds of these orders would mean stretching the clear meaning of the court's words to a nonsensical degree. Furthermore, per this court, the DIP Lender Reimbursements were to be made ***only after*** VitaNova furnished an invoice to the U.S. Trustee and the UCC and a five-day objection period elapsed. In the DIP Orders, the court clearly established that this procedure was to be followed in order for the Reimbursements to the DIP Lender to be properly authorized. VitaNova never presented invoices to the U.S. Trustee and the UCC before Tahoe Joe's made either payment to SZTX. Nor were the U.S. Trustee or the UCC given their stipulated five days to object. Consequently, ***even if the language of this court's DIP Orders was broad enough to encompass reimbursements for the SZTX-VitaNova Loan*** (a notion that this court does not adopt), ***this payment was not an authorized DIP Lender Reimbursement*** because the steps that this court mandated in its DIP Orders for payments to the DIP Lender to be properly authorized were not taken.[51]

As far as Defendant's statement that it had no knowledge of these requirements for reimbursement, this claim has no real merit: such knowledge, or lack thereof, is not an element the Liquidating Trustee must prove in a section 549(a) avoidance action. In addition, such a claim seems rather farfetched. SZTX, by its own admission, was created for the specific purpose of lending the DIP Loan funds to VitaNova. SZTX is indirectly owned and controlled by Allen Jones and Larry Harris, who also are two of the three owners of VitaNova, as well as owners of each of the Debtors. SZTX is no arm's-length lender with no other relationship to any parties in the case.

---

[51] In addition, the $1,690 transfer on June 21 cannot be a DIP Lender Reimbursement because, prior to that date, the Debtors had already exhausted the $125,000 limit on DIP Lender Reimbursements agreed to in the Approved Budget. *See Trustee's App'x*, p. 62 (email from Pegnia stating the funds budgeted for DIP Reimbursements had been fully used).

Given this, the court finds Defendant's claimed ignorance unpersuasive; however, it is irrelevant regardless.

In its Brief, the Defendant half-heartedly mentions that the Challenged Transfers also were authorized by the Bankruptcy Code but ***fails to identify any Code section that provides such authority.*** It merely states, generally, that the Interim and Final DIP Orders "clearly spell out the applicable sections of the Bankruptcy Code."[52] Again, this does not create a question of fact for trial – the proper interpretation of the Bankruptcy Code also is a question of law for the Court to resolve.[53] However, Defendant does not actually point to any specific Code section in support of its argument. If the Bankruptcy Code authorized the Challenged Transfers, SZTX could easily identify the applicable Code sections and move for judgment. Given that Defendant has the burden under Fed. R. Bankr. P. 6001 to establish that the Code authorizes the transfers to SZTX, its failure to mention any persuasive part of the Code speaks for itself.

Lastly, it bears mention that the bankruptcy professionals advising the Debtors appeared to unanimously believe that the Challenged Transfers were not authorized by the DIP Orders. After the $1,690 transfer on June 23, 2021, Joseph Pegnia, Managing Director of B. Riley Advisory Services (the Debtors' court-appointed financial advisors) sent an email to Martin Cortes (VitaNova's CFO) and stated in part "[a]s I understand it SZTX is the lender to VitaNova, ***and therefore should not be paid by the Debtors***."[54] Having been forwarded the email chain discussing the Challenged Transfers made to SZTX, Mark Shapiro, the Debtors' Chief Restructuring Officer, concurred that the Debtors should not be paying "investor legal bills."[55] Debtor's counsel Aaron Kaufman also echoed this, writing "I think we just need to have SZTX and VitaNova refund those

---

[52] A.P. Doc. 20, p. 3.
[53] *Pritchard v. U.S. Trustee (In re England)*, 153 F.3d 232, 234 (5th Cir. 1998).
[54] *Trustee's App'x.*, p. 62.
[55] *Id.*, p. 64.

payments."[56] Clearly, the professionals involved in the case did not view these transfers as allowable.

We noted that the Defendant objected to the avoidability of the Challenged Transfers by arguing that if the Debtors had only indirectly reimbursed SZTX by routing the payments through VitaNova, Trustee would have no cause of action. But that is not what happened and that is not what is before the court. What in fact occurred was the Debtors paid over $21,000 of property of the bankruptcy estate postpetition to Defendant without court authorization or approval. Nor has a single Bankruptcy Code section allowing such a transfer been brought to this court's attention. Therefore, Defendant has failed to meet its burden under Fed. R. Bankr. P. 6001 in establishing the validity of the Challenged Transfers. Consequently, the Challenged Transfers are avoidable under Section 549(a).

### IV. Conclusion: Summary Judgment Granted in Favor of Trustee

For the reasons set forth herein, the court grants the Liquidating Trustee's Motion for Summary Judgment.

It is hereby ORDERED, ADJUDGED, AND DECREED THAT:

(1) The Challenged Transfers are AVOIDED pursuant to 11 U.S.C. § 549,

(2) The Liquidating Trustee shall recover from SZTX Enterprises, LLC the sum of $21,682, the amount of the Challenged Transfers, pursuant to 11 U.S.C. § 550(a), and

(3) The Liquidating Trustee is granted a money judgment against SZTX Enterprises, LLC in the sum of $21,682, plus costs and post-judgment interest, accruing at the current Federal Judgment Rate of 5.37%.

### *END OF MEMORANDUM OPINION, ORDER, AND JUDGMENT* ###

---

[56] *Id.*, p. 72.